IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAMEZ GHAZZAOUI,

*Plaintiff*,

v.

ANNE ARUNDEL COUNTY,
MARYLAND, et al.,

*Defendants*.

Civil Action No. ELH-14-1410

## MEMORANDUM OPINION

Plaintiff Ramez Ghazzaoui filed suit against defendants Anne Arundel County, Maryland; Anne Arundel County Police Department; Officer Dwayne Raiford; and Corporal Doyle Holquist.[1]  Alleging violations of his rights under the Fourth and Fourteenth Amendments of the United States Constitution, he has brought suit pursuant to 42 U.S.C. § 1983. Plaintiff also asserts claims under Maryland state law.  *See* ECF 3 ("Am. Compl." or "Amended Complaint").[2]

Presently pending before this Court are defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 5),  which is supported by a memorandum of law (ECF 5-1) (collectively, the "Motion"), and plaintiff's motion for leave to file a Second Amended Complaint (ECF 6, "Motion to Amend").  No hearing is necessary to resolve the motions.  *See* Local Rule 105.6. For the reasons that follow, I will grant plaintiff's Motion for Leave to Amend. Defendants' Motion will be granted in part, denied in part, and denied in part as moot.

---

[1] Officer Raiford and Corporate Holquist have been sued in both their individual and official capacities. Am. Compl. ¶ 8.

[2] Plaintiff filed an Amended Complaint prior to effecting service of process on defendants. *See* ECF 3.

**Factual Background**[3]

Shortly before midnight on April 26, 2013, Raiford and Holquist entered plaintiff's home, located at 8003 Sanctuary Court, Laurel, Maryland 20724, after receiving a report and observing an open garage that contained a vehicle with open doors.  Am. Compl. ¶ 11.  Raiford and Holquist searched the first floor of plaintiff's home, and then proceeded to the second floor to continue their search.  *Id.* ¶¶ 12-13.

Raiford and Holquist entered the second floor bedroom where plaintiff was sleeping and woke him. *Id.* at ¶ 14.  Raiford and Holquist asked plaintiff for identification, and plaintiff provided his driver's license, which reflected an address of 8003 Sanctuary Court, Laurel, Maryland 20724.  *Id.*  To substantiate that the residence was his home, plaintiff indicated that Raiford and Holquist could look at the photographs on the wall that depicted plaintiff, and speak with plaintiff's minor daughter, who was asleep in a bedroom down the hall.  *Id.*  Nevertheless, Raiford and Holquist remained on the premises. *Id.* ¶ 15.

After Raiford and Holquist refused to leave, plaintiff requested their names and badge numbers.  *Id.* at ¶ 16.  Raiford refused. *Id.*  Raiford and Holquist then arrested plaintiff.  *Id.*  According to plaintiff, the arrest was "unlawful" and "without a warrant and without probable cause."  *Id.*  Plaintiff asserts that during the course of the arrest, Raiford and Holquist "used excessive force, slamming Plaintiff's head and face into a wall and onto the floor, and brutally assaulted the Plaintiff's person," which resulted in "bruises and injuries to his body, including his face, head, lower back, and right arm." *Id.*

Following his arrest, Raiford and Holquist transported plaintiff to the Anne Arundel County Police Department, Western District Station for processing.  *Id.* ¶ 17.  At some point

---

[3] For the purposes of this Motion, the Court accepts as true the facts alleged in the Complaint.

after plaintiff was taken into custody, Holquist conducted a search of plaintiff's bedroom and master bathroom.  *Id.* ¶ 96.  Plaintiff alleges that the post-arrest search of the bedroom and master bathroom occurred "without a warrant, without probable cause, and without Plaintiff's consent."  *Id.* ¶ 97.

Plaintiff was confined to a jail cell until approximately 3:00 a.m. and then transported to the County Police Station, where he remained until 8:30 a.m.  *Id.*  That same morning, plaintiff was taken to the District Court for Anne Arundel County, where he appeared before a commissioner.  *Id.*  The statement of charges filed by Officer Raiford included two charges for obstructing and hindering a police officer in the performance of his lawful duties, two charges for resisting arrest, one charge for failure to obey a reasonable and lawful order of a law enforcement officer, and one charge for causing a physical injury in the second degree to a law enforcement officer engaged in the performance of his official duties.  *Id.*  Plaintiff remained in jail until the evening of April 28, 2013, when he posted bond.

The District Court acquitted plaintiff of the charge of failure to obey a reasonable and lawful order of a law enforcement officer.  *Id.* ¶ 21.  The remaining charges were tried before a jury in the Circuit Court for Anne Arundel County, and ultimately disposed of in plaintiff's favor, either by jury verdict or dismissal.  *Id.*

Subsequently, plaintiff initiated this action, asserting the following claims: Count I, "Violation of Maryland Declaration of Rights"; Count II, "Excessive Force/Police Brutality"; Count III, "Assault and Battery"; Count IV, "False Arrest"; Count V, "False Imprisonment; Count VI, "Malicious Prosecution"; Count VII, "Violation of 42 U.S.C. Sec. 1983/Deprivation of Federal Civil Rights Against Defendant Dwayne Raiford," based on violations of the Fourth and Fourteenth Amendments; Count VIII, "Violation of 42 U.S.C. Sec. 1983/Deprivation of

Federal Civil Rights Against Defendant Cpl. Doyle Holquist," based on violations of the Fourth and Fourteenth Amendments; Count IX, "Negligent Supervision, Training, and Retention Against Defendants Anne Arundel County and Anne Arundel County Police Department"; and Count X, "Violation of 42 U.S.C. Sec. 1983/Deprivation of Federal Civil Rights Against Defendant Cpl. Doyle Holquist for Unlawful Search and Seizure of Property," based on violations of the Fourth and Fourteenth Amendments.

After defendants moved to dismiss the suit, plaintiff filed a Motion to Amend, seeking leave to file a Second Amended Complaint to address certain deficiencies cited in defendants' Motion.   In particular, plaintiff seeks to: (1) remove the Anne Arundel County Police Department as a named defendant in the suit; (2) remove Anne Arundel County, Maryland as a defendant from Counts II-IV; (3) remove Count IX; "supplement/amend" Count I; and (4) "supplement/amend" Count X (renumbered as Count IX of the proposed Second Amended Complaint) by removing a claim for unlawful seizure of property and including additional factual allegations.   ECF 6 at 3.   Plaintiff opposes the dismissal of Count II as to Raiford and Holquist, and Count X as to Holquist (ECF 7, "Opposition").   In light of the Motion to Amend, plaintiff asks the Court to deny as moot defendants' motion to dismiss Counts I, III, IV, V, VI, VII, VIII, and IX of the Amended Complaint.

Defendants proceed as if the Court will grant the Motion to Amend.  They have replied to the Opposition based on plaintiff's proposed Second Amended Complaint (ECF 9, "Reply").

Additional facts are included in the Discussion.

## Standard of Review

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See McBurney v. Cuccinelli*, 616 F.3d

4

393, 408 (4th Cir. 2010).   To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007).   That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

To defeat a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."   *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal*, 556 U.S. at 679.   "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief.   *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, --- U.S. ----, 132 S. Ct. 1960 (2012).   Dismissal "is inappropriate unless,

accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief . . . .'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).  *See Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) ("'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'") (citation omitted); *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'  Dismissal is appropriate if the law simply affords no relief.") (citation omitted).

In considering a Rule 12(b)(6) motion, the court '"must accept as true all of the factual allegations contained in the complaint,'" and must '"draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co.*, *supra*, 637 F.3d at 440 (citations omitted); *see*, *e.g.*, *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011) (the court must construe the well-pled facts "in the light most favorable to the nonmoving party") *cert. denied*,     --- U.S. ----, 132 S. Ct. 402 (2011).  But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  Nor must it accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, --- U.S. ----, 130 S. Ct. 1740 (2010).  If the "well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citation omitted).

In resolving a motion to dismiss pursuant to Rule 12(b)(6), the court "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," the court may resolve the applicability of a defense by way of a Rule 12(b)(6) motion.  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6).  *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

## Discussion

### I.   Motion for Leave to Amend

Defendants consent to the filing of a second amended complaint, but oppose the proposed Second Amended Complaint as currently drafted because it seeks to incorporate the original complaint and Amended Complaint by reference.  *See* ECF 8; ECF 8-1.

Fed. R. Civ. P. 10(c) provides: "A statement in a pleading may be adopted by reference . . . in any other pleading or motion."  "'Although there is no prescribed procedure for referring to incorporated matter, the references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.'"  *United States v. Int'l Longshoremen's Ass'n,* 518 F. Supp. 2d 422, 461 (E.D.N.Y. 2007) (quoting 5A Wright & Miller, Federal Practice & Procedure § 1326 (3d ed.) (citing, *inter alia,*

*Arce v. Walker,* 139 F.3d 329, 336 n.7 (2d Cir. 1998))); *see also, e.g., Wolfe v. Charter Forest*

*Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 228-29 (W.D. La. 1999) (explaining that adoption

by reference in later complaints "must be done with a degree of specificity and clarity which

would enable the responding party to easily determine the nature and extent of the

incorporation"). As the court stated in *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446-47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010):

> This requirement of clarity ensures fairness to the responding party, for without
> this requirement incorporations "may prove confusing and inconvenient." 5A
> Wright & Miller, *supra,* § 1326. And the risk of such confusion and
> inconvenience is particularly high where, as here, a party seeks wholesale
> incorporation in an amended pleading of a superseded version of that same
> pleading. This is so because "[a]s a general rule, 'an amended pleading ordinarily
> supersedes the original and renders it of no legal effect.'" *Young v. City of Mount
> Ranier,* 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co.
> v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),* 226 F.3d 160, 162 (2d Cir.
> 2000)). This general rule, like Rule 10(c)'s clarity requirement, also has fairness
> as its purpose, for it breeds confusion and uncertainty if in responding to an
> amended pleading, a party is required to take into account a number of other,
> superseded pleadings. This is especially true with respect to a complaint, which
> serves as the "pleading that starts a civil action and states ... the basis for the
> plaintiff's claim[ ] and the demand for relief." *Black's Law Dictionary* (8th ed.
> 2004) (defining "complaint"). In summary, although Rule 10(c) grants a pleader
> the privilege of incorporating "a statement" by reference, this privilege is not
> without limits, as it can easily be abused. Rule 10(c). Thus, wholesale
> incorporations—particularly those that seek to incorporate superseded versions of
> a complaint—must be examined with special care.

In this case, the proposed Second Amended Complaint "incoporat[es] Plaintiff's prior

Complaint and Amended Complaint by reference," Second Am. Compl., ECF 6-2 at 1, with no

guidance as to which specific allegations are to be deemed incorporated. I agree with defendants'

view that this wholesale incorporation of plaintiff's prior complaints into the proposed Second

Amended Complaint fails to achieve the level of clarity required by Fed. R. Civ. P. 10(c),

particularly in light of the fact that plaintiff has abandoned certain claims and parties. ECF 8-1 at

4. *See Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 08-CV-5023(CBA)(RLM), 2010 WL

1257803 (E.D.N.Y. Mar. 26, 2010) ("A Rule 10(c) adoption clause that does little more than make wholesale reference to the contents of a prior pleading exemplifies the kind of incorporation that fails to give the requisite guidance to the responding party." (internal quotation marks omitted)). Indeed, the proposed Second Amended Complaint appears to stand as an independent pleading, as it restates many of the allegations in the Amended Complaint.

Pursuant to Fed. R. Civ. P. 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either upon a party's motion or *sua sponte.* "[A] district court has broad discretion in deciding whether to strike matters from pleadings." *F.D.I.C. v. Willetts*, 882 F. Supp. 2d 859, 870 (E.D.N.C. 2012), reconsideration denied (Oct. 2, 2012).

For the foregoing reasons, I will grant the Motion to Amend, but strike the clause of the proposed Second Amended Complaint "incoparating Plaintiff's prior Complaint and Amended Complaint by reference herein." Second Am. Compl., ECF 6-2 at 1.

Because I grant plaintiff leave to amend, I will deny defendants' Motion as moot, except as to Count II and Count X of the Amended Complaint. Because I granted the Motion to Amend, the Second Amended Complaint is the operative pleading for the purposes of ruling on dismissal. Accordingly, I next address whether Count II and Count IX[4] of the Second Amended Complaint are subject to dismissal.

## II.  Motion to Dismiss

### A.  Count II

In Count II, plaintiff purports to bring a common law tort claim for "excessive force/police brutality." Defendants argue that Count II is subject to dismissal because there is no

---

[4] As noted, Count X of the Amended Complaint is renumbered as Count IX of the Second Amended Complaint.

independent cause of action for "excessive force/police brutality."   ECF 9 at 1.   Moreover, defendants assert that the allegations in Count II are duplicative of Counts I, VII and VIII, which assert claims for use of excessive force in violation of the Maryland Declaration of Rights and the Fourth and Fourteenth Amendments.

Defendants' argument is well founded.  Accordingly, to the extent that plaintiff purports to assert an independent cause of action under state tort law for "excessive force" and "police brutality," the Court grants defendants' motion to dismiss Count II.  *See Mejica v. Montgomery Cnty., Md.*, No. 8:12-CV-00823-AW, 2013 WL 326734, at *5 (D. Md. Jan. 28, 2013) (dismissing a purported common law tort claim for "excessive force" on the basis that Maryland does not recognize a tort of excessive force, and the excessive force claim duplicated plaintiff's state constitutional tort claim).

### B.  Count IX

Plaintiff's claim in Count IX is brought under 42 U.S.C. § 1983. Section 1983 provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)). In analyzing a § 1983 claim, a court must first identify "the specific constitutional right allegedly infringed." *Albright,* 510 U.S. at 271.

In Count IX, plaintiff alleges that Holquist violated his constitutional rights when he searched plaintiff's bedroom and master bathroom, including plaintiff's nightstand, after plaintiff was arrested and taken into custody.   According to plaintiff, Holquist conducted the search "without a warrant, without probable cause, and without Plaintiff's consent."   Second Am. Compl. ¶ 85.  In plaintiff's view, there was no legitimate law enforcement purpose for the search. *Id.* ¶ 80.   Plaintiff insists that he posed no threat to Holquist at the time, *id.* ¶ 79, and that Holquist knew or should have known that plaintiff's minor daughter was not in the bedroom or master bathroom because plaintiff had told Holquist earlier that his daughter was sleeping in a bedroom down the hall.  *Id.* ¶ 81.

Defendants move to dismiss Count IX on two grounds. First, defendants maintain that that Holquist did not violate plaintiff's Fourth Amendment rights. ECF 9 at 2-3. Second, defendants contend that Holquist is protected from liability based on qualified immunity.  *Id.* at 3-4.

## 1.   Fourth Amendment

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const., amend. IV. By its plain text, the Fourth Amendment "does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."  *Florida v. Jimeno,* 500 U.S. 248, 250 (1991); *see Wren v. United States,* 517 U.S. 806, 809–10 (1996); *Illinois v. Rodriguez,* 497 U.S. 177, 183 (1990); *United States v. Sharpe,* 470 U.S. 675, 682 (1985); *United States v. Mendenhall,* 446 U.S. 544, 551 (1980).  The "test of reasonableness under the Fourth Amendment is an objective one."  *Los Angeles County v. Rettele,* 550 U.S. 609, 614 (2007) (citing *Graham v. Connor,* 490 U.S. 386, 397 (1989)).

As the Supreme Court has recognized: "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586 (1980).  Indeed, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."  *Id. at* 585 (quotations omitted); *see also Kyllo v. United States,* 533 U.S. 27, 31 (2001) ("At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."). With certain exceptions, such as consent or exigent circumstances, "entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant."  *Steagald v. United States*, 451 U.S. 204, 211 (1981).

Defendants maintain that it was not a constitutional violation for Holquist to reenter plaintiff's home following the arrest because he did so in order to make arrangements for the care of plaintiff's minor daughter.  ECF 5-1 at 14-15.  According to plaintiff, even if it was Holquist's intention to make arrangements for plaintiff's daughter, the search of plaintiff's bedroom and master bathroom nevertheless fails to withstand scrutiny under the Fourth Amendment because Holquist knew or should have known that plaintiff's daughter was sleeping in a bedroom down the hall. ECF 7 at 9. Plaintiff insists there was no basis for searching plaintiff's bedroom and master bathroom, and Holquist stepped outside of the "zone of reasonableness" in doing so. *Id.*

In support of their position that the search was lawful, defendants cite *United States v. Taylor*, 624 F.3d 626 (4th Cir. 2010), a case involving a police officer who entered a defendant's house without a warrant to locate the parents of a four-year-old girl found wandering on a busy street, who indicated it was her home.  The Fourth Circuit ultimately concluded that "both the

self-evident danger that the abandoned child posed to herself and the inference of danger to her caretaker made it reasonable to conclude that it was necessary to make a brief entry to find someone inside the home-and to do so promptly." *Id.* at 632-33.  To that end, the Fourth Circuit observed that, as a general matter, "'the absence of responsible adult supervision of children is an exigent circumstance justifying a warrantless entry.'"  *Id.* at 632 (quoting *People v. Peterson,* 273 Ga. 657, 543 S.E.2d 692, 696 (2001)).  However, the Court also made clear that "'[a]ny search following warrantless entry for emergency reasons ... must then be limited by the type of emergency involved. It cannot be used as the occasion for a general voyage of discovery unrelated to the purpose of the entry.'"  *Taylor*, 624 F.3d at 633 (quoting *United States v. Moss,* 963 F.2d 673, 678 (4th Cir. 1992)) (alterations in original).

The facts alleged in the Second Amended Complaint may suggest that exigent circumstances warranted entry into plaintiff's home following his arrest to secure care for plaintiff's minor daughter.  But, even assuming Holquist's initial entry into the house was lawful, the allegations in the Second Amended Complaint also support the inference that the post-arrest search of plaintiff's bedroom and master bath—which included the nightstand—was unreasonable insofar as it exceeded the scope of the exigency.

Defendants insist that the search of plaintiff's bedroom and master bath was justified as a protective sweep.  ECF 9 at 3.  Plaintiff asserts that the search was unlawfully conducted without a warrant and without his consent.  Second Am. Compl. ¶ 79.  This dispute cannot be resolved in connection with a motion to dismiss.  For the purpose of this Motion, plaintiff's allegations must be accepted as true.  The facts, as pled, are adequate to state a claim under § 1983 for a violation of plaintiff's rights under the Fourth Amendment.

### 2. Qualified Immunity

With respect to claims under § 1983, courts have recognized qualified immunity as an affirmative defense. "The doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *Merchant v. Bauer,* 677 F.3d 656, 661 (4th Cir. 2012) (quoting *Saucier v. Katz,* 533 U.S. 194, 206 (2001)). Put another way, qualified immunity shields government officers from liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Thus, "officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful" will be entitled to immunity from suit. *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (en banc), *cert. denied,* ––– U.S. ––––, 132 S. Ct. 781 (2011); *accord Durham v. Horner,* 690 F.3d 183, 188 (4th Cir. 2012); *see Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013) ("For a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

"The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson,* 555 U.S. at 231 (citation omitted). Because qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow,* 457 U.S. at 818, an officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. "Although officers are only human and even well-intentioned officers may make unreasonable mistakes on occasion, the doctrine of qualified immunity does not serve to protect them on those occasions." *Henry,* 652 F.3d at 535.

The qualified immunity analysis can be separated into two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a constitutional right," *Saucier,* 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant,* 677 F.3d at 662 (citation omitted).

As discussed, plaintiff alleges that the search violated his rights under the Fourth Amendment. Defendants argue that, even if Holquist violated the Fourth Amendment, Holquist is entitled to qualified immunity because he "could not have known that his actions in preventing a 9 year old child from being left alone in a house at midnight when her father was arrested constituted a constitutional violation." ECF 5-1 at 18. Whether Holquist is protected by qualified immunity depends upon resolution of factual questions surrounding plaintiff's Fourth Amendment claims and the reasonableness of Holquist's actions. Given the undeveloped facts of the case, dismissal of Count IX based on qualified immunity is not proper at this juncture in the litigation.

Accordingly, defendants' Motion will be denied as to Count IX.

**Conclusion**

For the foregoing reasons, plaintiff's Motion to Amend will be granted. Defendants' Motion will be granted as to Count II, denied as to Count IX, and denied as moot as to the remaining counts in the Second Amended Complaint.   A separate Order, consistent with this Memorandum Opinion, follows.


Date:   August 11, 2014                            _____/s/_____
                                                                  Ellen Lipton Hollander
                                                                  United States District Judge